## CAVE et al. v. RUDOLPH et al.

(Court of Appeals of District of Columbia. Submitted October 24, 1922. Decided March 5, 1923.)

### No. 3799.

**1. Injunction ☞105(2)—Remedy at law by attacking validity of regulation in prosecution is adequate.**

Equity will not take jurisdiction, where there exists a plain, adequate, and complete remedy at law, and ordinarily the remedy to determine the invalidity of a regulation of the district, by raising that question in a prosecution for violation of the regulation in the municipal court, and on writ of error to the District Court of Appeals, would be as efficient as the remedy by injunction to restrain the prosecution.

**2. Injunction ☞105(2)—Mere possibility of multiplicity of prosecutions does not authorize injunction to test regulation.**

The mere possibility of a multiplicity of arrests and trials for violation of a District regulation alleged to be invalid is insufficient to sustain the jurisdiction of equity to enjoin prosecutions, since a party charged with repeated violations of the regulation could save his rights, and if the prosecution should actually proceed with numerous trials against him, instead of relying on a single test case, equity could thereupon interfere to prevent that procedure, leaving the issue nevertheless to be decided at law.

**3. Injunction ☞105(2)—Ordinarily not issued to enjoin criminal prosecution for violation of ordinance.**

Equity will not enjoin criminal proceedings for the enforcement of municipal ordinances, unless such proceedings are instituted by a party to a suit already pending in equity to try the same right that is in issue there, or to prohibit the invasion of rights of property by the enforcement of invalid or void ordinances.

**4. Injunction ☞105(2)—Regulation of public taxicabs on street does not invade property rights.**

The regulation of the District of Columbia that a driver of a public vehicle for hire shall not stop upon a street, except at a public hack stand, or while actually taking on or discharging a passenger, does not invade the property rights of drivers of taxicabs, so as to entitle them to enjoin the enforcement of the regulation, if invalid, since such drivers do not possess any peculiar rights in the streets, but their rights therein are held by license only, and are such as belong to the public in general.

**5. Injunction ☞137(1)—Regulation adopted under authority of Congress should not be set aside before final hearing.**

A regulation of the use of streets by vehicles, adopted under the authority given the commissioners of the District by Act Jan. 26, 1887, § 1, and Joint Resolution Feb. 26, 1892, § 2, should not be suspended by equity before a final decision is had as to its validity.

Appeal from the Supreme Court of the District of Columbia.

Suit by Herbert C. Cave and others against Cuno H. Rudolph and others, Commissioners of the District of Columbia, and another, to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

restrain the enforcement of a regulation. From a decree dismissing the petition, defendants appeal. Affirmed.

N. C. Turnage and C. F. Claxton, both of Washington, D. C., for appellants.

F. H. Stephens and R. L. Williams, both of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. On the 12th of August, 1921, the commissioners of the District of Columbia enacted a regulation, to become effective on the 30th day thereafter, in the following terms, to wit:

"Section 13. A driver of a public vehicle for hire shall not stop or loiter upon a street except at a public hack stand or while actually taking on or discharging a passenger." Article IV, section 13, Police Regulations of the District of Columbia.

The authority under which the commissioners acted when passing the regulation is to be found in an act of Congress (24 Stat. 368, § 1), which reads in part as follows:

"That the commissioners of the District of Columbia be, and they are hereby, authorized and empowered to make, modify, and enforce usual and reasonable police regulations in and for said District, as follows:

\* \* \* \* \* \* \* \* \*

"Fourth. To make needful regulations for the orderly disposition of carriages or other vehicles assembled on streets or public places, and to require vehicles upon such streets and avenues as they deem necessary to pass along on the right side thereof.

\* \* \* \* \* \* \* \* \*

"Tenth. To regulate the movements of vehicles on the public streets and avenues for the preservation of order and the protection of life and limb."

Afterwards by a joint resolution Congress provided that, in addition to the foregoing authority, the commissioners shall be empowered to make and enforce all such reasonable and usual police regulations—

"as they may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District of Columbia." 27 Stat. 394, § 2.

After the enactment of the regulation, and before it became effective, the appellants filed a bill in equity in the Supreme Court of the District, against the commissioners and the major and superintendent of police, praying for an injunction to prevent them from enforcing it.

In their petition the plaintiffs averred that they are engaged in the business of transporting passengers for hire upon the streets of the District, at such lawful rates of fare as may be agreed upon by individual contracts between themselves and their passengers; that their principal source of employment consists of such casual calls as may be made for their services upon the streets, at points which are convenient for prospective passengers; that they are not permitted to solicit business upon the streets, except by displaying a sign upon their vehicles; that their business is commonly known as "public hacking,"

and is in competition with so-called "private hackers," who are supposed to depend for employment upon messages sent to their offices or garages; that about 892 motor vehicles are now employed in the business of public hacking in the District; that nevertheless under said ordinance the defendants have established hackstands, which will accommodate only 195 vehicles, although room for 61 more is contemplated; that the locations of those already established are inconvenient and unsatisfactory; and that by reason thereof the great majority of the persons engaged in the said business will be practically excluded from the use of the streets, and from the ordinary and reasonable pursuit of their lawful occupation.

They say, furthermore, that there is approximately $1,000,000 invested in the business of public hacking in the District, with about 1,000 persons employed therein, and that if said ordinance be enforced it will result in irreparable injury to plaintiffs and others similarly employed, for which they would have no adequate remedy at law. They claim that the ordinance is unreasonable, arbitrary, and discriminatory; that it would deprive the appellants of a reasonable opportunity to pursue their lawful and useful calling, and would tend in practice to build up a monopoly of said business in favor of the private hackers aforesaid; and for these reasons and others incident thereto they claim that the ordinance is illegal and void. They therefore prayed for an injunction as aforesaid, and for general relief.

The defendants filed a motion to dismiss the petition upon grounds which amounted to a general demurrer thereto. The court sustained the motion, and dismissed the petition. The defendants appealed.

We sustain the decision of the trial court upon the following grounds:

[1] 1. It is of course axiomatic that in general courts of equity will not take jurisdiction of causes for which there exists a plain, adequate, and complete remedy at law. 21 Corpus Juris, p. 41. In the instant case the issue relates to the validity of the aforesaid ordinance. The ordinance, however, can only be enforced against the plaintiffs by an arrest and prosecution before the police court of the District. That court is a law court, upon which jurisdiction in such cases has been conferred by statute; and in case of an arrest under the ordinance the defendant would be entitled to contest its validity in that court upon the same principles as would be applicable in a court of equity. If the ordinance should be found invalid at law, the defendant would be discharged. Furthermore, the decision of the police court in such a case would be reviewable upon a writ of error to this court. It appears accordingly that the final relief of such a defendant, and the mode of obtaining it, at law, would be as efficient as in equity; and that in either case the decision upon the ordinance would be reviewable by this court.

[2] Nor does the possibility of a multiplicity of arrests and trials in such cases, pending a final decision of the question, avail to bring the issue within the jurisdiction of equity; for if a party should elect to repeatedly violate the ordinance before a final decision could be had concerning its validity, he could not complain of its enforcement against him under the circumstances. He could nevertheless save his rights

by error as in other cases, and if the prosecution should actually proceed with numerous trials against an individual, instead of relying upon a single test case, equity could thereupon interfere to prevent that procedure, leaving the issue nevertheless to be decided at law. The present case does not now present such a situation. Third Ave. Railroad Co. v. Mayor et al., 54 N. Y. 159.

[3] 2. It is accordingly a well-established rule that equity will not enjoin criminal proceedings for the enforcement of municipal ordinances, unless such proceedings are instituted by a party to a suit already pending in equity, and to try the same right that is in issue there, or to prohibit the invasion of rights of property by the enforcement of an invalid or void ordinance. The rule is well stated in a note to 21 L. R. A. 84, and is sustained by the citation of numerous authorities. The note reads as follows:

"It may be fairly stated that, in a prosecution by the state, equity has no jurisdiction to interfere, and that it will not enjoin a prosecution under a city ordinance where the ordinance is invalid, if there is any remedy at law. The exceptions to these general propositions, other than one or two doubtful cases, are where equity has jurisdiction first, and one of the litigants tries to defeat this jurisdiction by starting a criminal prosecution involving the same parties on account of the same subject-matter; or where there are a multiplicity of actions brought under a city ordinance solely to harass, or an effort made under a city ordinance to destroy vested franchises and affect the rights of property. But even then equity will insist on having the question tried at law and will stay the other actions until the question is determined."

See, also, In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402; Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778; Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169; Phillips et al. v. Mayor et al., 61 Ga. 386.

[4] The ordinance now in question does not invade the property rights of the plaintiffs within the sense of the foregoing rule, for the plaintiffs do not possess any peculiar right, interest, or franchise in the streets of the District. Their rights therein are held by license only, and are such as belong to the public in general. They cannot be called franchises or vested property interests. Accordingly the present case does not come within any of the exceptions above noted. This subject has already been considered by the courts of the District.

In the case of the Washington & Georgetown Railway Co. v. District of Columbia et al., 6 Mackey (D. C.) 570, an injunction was sought in the Supreme Court of the District to restrain the enforcement of an ordinance compelling street railways within the District to obtain a license for their cars; the license fee being $6 for each car, under penalty of a fine in event of failure so to do. The bill alleged that the ordinance was invalid and void, and that, if the defendants were not enjoined from enforcing it, the railway company would suffer irreparable injury in its business and welfare, and that it was without adequate remedy at law. The Supreme Court of the District dismissed the bill, thus remitting the company to its remedies at law, and this decision was sustained upon appeal by the Supreme Court of the District sitting in general term.

In Shoemaker v. Entwisle, 3 App. D. C. 252, a bill in equity was filed against the inspector of buildings for the District to enjoin him from proceeding in the police court to enforce a penalty against complainant, because of her failure to remove a wall on her premises, which the inspector had found to be dangerous. The court denied the prayer for an injunction and said:

"We are of opinion that the police court of the District of Columbia, to which has been committed by the legislative power the right to adjudicate upon the forfeiture claimed from this appellant, has full power to determine all the issues that it has been sought to raise by this bill in equity. * * * So holding, we must hold further that a court of equity has no jurisdiction in the premises to grant the relief prayed for by the appellant. If the jurisdiction of a court of equity could be upheld in this case, it would nullify all attempts to enforce the municipal ordinances of the District of Columbia, and take away from the court especially created for that purpose the authority conferred upon it by Congress to pass upon such ordinances and questions of their violation. A court of equity cannot be substituted for the police court in this case; and, as we have seen, there is no necessity for the substitution."

See, also, Dewey Hotel Co. v. United States Electric Lighting Co., 17 App. D. C. 356; Siddons v. Edmonston et al., 42 App. D. C. 459, 464.

[5] Finally, it may be said that Congress has empowered the commissioners of the District to enact such usual and reasonable regulations as they may deem necessary for the control and regulation of vehicular traffic upon the public streets, and it is within common knowledge that this duty becomes daily more difficult and more important. The regulation now in question was formally enacted by the commissioners in alleged compliance with the statute. Its operation should not be suspended by means of equitable interference, with the practical result of abrogating it until a final decision may be had as to its validity, thus permitting it to be violated with impunity in the meantime. It should rather be held that such violations, if any occur, should expose the party thus acting, to the penalties of the ordinance, in case it be finally maintained by the courts.

We quote the following comments by Wellborn, J., in Davis & Farnum Mfg. Co. v. Los Angeles (C. C.) 115 Fed. 537, 543:

"In addition to what has already been said, it may be appropriately observed that municipal and state regulations of saloons, beer halls, theaters, and places of amusement generally, market places, slaughterhouses, gas works, powder magazines, laundries, cemeteries, fire limits, streets (particularly obstructions, railway tracks, telegraph poles, pipe lines, etc., therein)—indeed of all establishments, trades, and occupations subject to the police power of the state—unavoidably affect property rights and are usually rendered effective by making their violations punishable offenses. Now, if there were such jurisdiction as that for which complainant contends, every controversy over the validity of an ordinance or statute relating to any of the matters enumerated would furnish an occasion for interference by injunction; and thus would be presented the remarkable situation of courts of equity, state and federal, exercising supervisory power over the administration of a part, not inconsiderable, of the criminal laws of the country."

287 F.—63

In accordance with the foregoing views, we find it unnecessary to consider or pass upon the validity of the ordinance in question; for upon the grounds above stated, we affirm the decision of the Supreme Court of the District, at the costs of the appellants.