NATIONAL ASSOCIATION OF MANUFAC-
TURERS OF UNITED STATES et al.
v. McGRATH.

Civ. A. No. 381–48.

United States District Court
District of Columbia.

March 17, 1952.

Carl McFarland, Ashley Sellers, Raymond S. Smethurst and Kenneth L. Kimble, all of Washington, D. C., for the plaintiffs.

. Holmes Baldridge, Asst. Atty. Gen., Edward H. Hickey, Donald B. MacGuineas, and Irving Malchman, Attorneys, Department of Justice, all of Washington, D. C., for the defendant.

Before WILBUR K. MILLER, Circuit Judge, and SCHWEINHAUT and HOLTZOFF, District Judges.

HOLTZOFF, District Judge.

This action is brought by the National Association of Manufacturers of the United States and one of its officers against the Attorney General of the United States, to enjoin him from instituting prosecutions against them for violations of the Federal Regulation of Lobbying Act, Act of August 2, 1946, secs. 302–311, 60 Stat. 839, 2 U.S. C.A. §§ 261–270. The basis of the action is twofold: first, that the Act is unconstitutional; and, second, that even if valid, it is not applicable to the plaintiffs.

The Act may be divided into two parts: First, all persons, except political committees, who directly or indirectly solicit, collect, or receive money to be used principally to aid, or whose principal purpose is to aid in the passage or defeat of any legislation by the Congress of the United States; or to influence, directly or indirectly, the passage or defeat of legislation by the Congress of the United States, are required to keep a detailed and exact account of contributions and expenditures with receipted bills, and to file with the Clerk of the House of Representatives quarterly statements listing contributions and expenditures. Secs. 303–307.

The second part of the Act requires persons who engage for pay, or for any consideration, to attempt to influence the passage or defeat of legislation by the Congress of the United States, to register with the Clerk of the House of Representatives and with the Secretary of the Senate, and to file certain quarterly reports. Sec. 308. These two parts of the Act are severable. The second is not involved in this action.

It is a general principle that equity will not enjoin prosecuting officers of the Government from instituting or maintaining criminal prosecutions.[1] Any defense that a person has to a criminal prosecution may be asserted at the trial of the criminal case and will not be adjudicated in advance by a court of equity. For this reason, this Court will not consider the contention that on the factual situation presented by the evidence, consisting of lengthy depositions and voluminous exhibits, the plaintiff Association is not subject to the terms of the statute. This is a defense that must be passed upon, in a criminal proceeding, if a prosecution is instituted.

On the other hand, an exception to the general principle is at times made if it is contended that the statute is unconstitutional and the consequences of a violation may be unusually serious, possibly resulting in irreparable damage.[2] For example, in this case if the statute is valid and the Association erroneously determines that it is not subject to its provisions, it may be liable to a penalty, not only of a fine, but of a proscription for a period of three years from attempting to influence directly or indirectly the passage or defeat of any proposed legislation by the Congress. The Court is of the opinion that this case is within the exception insofar as concerns the contention that the pertinent provisions of the statute are unconstitutional. Accordingly the Court will in this action pass upon the validity of these provisions.

The Government has raised the question whether the plaintiffs are in a position to maintain this action on the ground that no prosecution has, as yet, been threatened. A great deal of testimony has been taken on this issue. The Court finds that such a prosecution has, in fact, been threatened, even though the threat has not been made formally.

The vital provision of the pertinent portions of the statute, Sec. 307, makes its requirements applicable to any person who, by himself or through any agent or employee, or other persons, in any manner whatsoever, directly or indirectly, solicits, collects, or receives money to be used principally to aid, or whose principal purpose is to aid, in the passage or defeat of any legislation by the Congress, or to influence, directly or indirectly, the passage or defeat of any legislation by the Congress of the United States. It is a well established principle that a criminal statute must define the crime with sufficient precision and formulate an ascertainable standard of guilt, in order that any person may be able to determine whether any action, or failure to act, is prohibited. A criminal statute which does not comply with this principle is repugnant to the due process clause and is, therefore, invalid. This is a fundamental principle in our constitutional system, since without it, it would be possible to punish a person for some action or failure to act not defined in the criminal law and which that person had no way of knowing was forbidden.

For example, in International Harvester Co. v. Kentucky, 234 U.S. 216, 221, 34 S. Ct. 853, 58 L.Ed. 1284, the Court passed upon the validity of a Kentucky statute, which made certain combinations for the purpose of controlling prices lawful, unless for the purpose or with the effect of fixing a price that was greater or less than the real value

1. Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 79 L.Ed. 1322; Cave v. Rudolph, 53 App.D.C. 12, 15, 287 F. 989.

2. Dobbins v. Los Angeles, 195 U.S. 223, 241, 25 S.Ct. 18, 49 L.Ed. 169; Ex parte Young, 209 U.S. 123, 163 et seq., 28 S.Ct. 441, 52 L.Ed. 714; Truax v. Raich, 239 U.S. 33, 37–39, 36 S.Ct. 7, 60 L. Ed. 131; Adams v. Tanner, 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336; Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 143, 44 S.Ct. 257, 68 L.Ed. 596; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402; Cline v. Frink Dairy Co., 274 U.S. 445, 451–452, 47 S.Ct. 681, 71 L.Ed. 1146; Parker v. Brown, 317 U.S. 341, 349–350, 63 S.Ct. 307, 87 L.Ed. 315; Hynes v. Grimes Parking Co., 337 U.S. 86, 98–100, 69 S.Ct. 968, 93 L.Ed. 1231.

of the article. The Court held that the statute offered no standard of conduct and was, therefore, invalid.

In United States v. L. Cohen Grocery Co., 255 U.S. 81, 89, 41 S.Ct. 298, 65 L.Ed. 516, the Court held unconstitutional an Act of Congress, which made it unlawful for any person wilfully to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries. This result was reached on the ground that no definite standard of conduct was prescribed by the statute.

In Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 128, 70 L.Ed. 322, the Court considered an Oklahoma statute, which provided that all persons employed by or on behalf of the State shall be paid not less than the current rate of per diem wages in the locality where the work is performed. It was held that this statute was repugnant to the due process clause of the Fourteenth Amendment on the ground that the phrase "current rate of wages" and the word "locality" were indefinite and ambiguous. The Court summarized the pertinent principles as follows: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

In Cline v. Frink Dairy Co., 274 U.S. 445, 456, 47 S.Ct. 681, 71 L.Ed. 1146, the Court struck down a State statute, which declared all combinations to be against public policy, unlawful and void, except those whose object and purpose was to conduct operations at a reasonable profit or to market at a reasonable profit those products which otherwise could not be so marketed. The Court reached the conclusion that this statute involved so many factors of varying effect that one could not decide in advance whether any proposed action on his part would violate it.

In Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 242, 52 S.Ct. 559, 76 L.Ed. 1062, the Court held invalid a statute, which prohibited production of crude oil in such manner and under such conditions as to constitute waste. The Court referred to the fact that the general expressions employed were not known to the common law or shown to have any meaning in the oil industry sufficiently definite to enable those familiar with the operation of oil wells to apply them with any reasonable degree of certainty.

In Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 621, 83 L.Ed. 888, the Court had before it a New Jersey statute to the effect that any person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, is declared to be a gangster. The Court held that the words "gang" and "gangster", and the phrase, "known to be a member", were ambiguous and so vague, indefinite, and uncertain as to render the statute repugnant to the due process clause of the Fourteenth Amendment.

In Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840, a New York statute which punished any one who published, sold, distributed or showed, or had in his possession, with intent to sell, distribute or show, any printed paper principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures or stories of deeds of bloodshed, lust, or crime, was deemed not to meet the required standards and not to contain ascertainable standards of guilt. The Court concluded that the statute was violative of the due process clause of the Fourteenth Amendment.

The Court of Appeals for the District of Columbia in United States v. Capital Traction Co., 34 App.D.C. 592, passed upon a statute imposing penalties on any street railway company in the District of Columbia, that failed to supply and operate a sufficient number of cars, to all persons desirous of the use of said cars, "without crowding said cars". The Court held that

514

the statute was unconstitutional, as the phrase "without crowding" was too uncertain and indefinite to constitute an ascertainable standard of guilt. It pointed out that the dividing line between what is lawful and unlawful may not be left to conjecture.

■ Applying the foregoing doctrine to the instant case, the conclusion is inescapable that Sections 303 to 307 are invalid. The clause, "to influence, directly or indirectly, the passage or defeat of any legislation by the Congress" is manifestly too indefinite and vague to constitute an ascertainable standard of guilt. What is meant by influencing the passage or defeat of legislation indirectly? It may be communication with Committees or Members of the Congress; it may be to cause other persons to communicate with Committees or Members of the Congress; it may be to influence public opinion by literature, speeches, advertisements, or other means in respect to matters that might eventually be affected by legislation; it may be to influence others to help formulate public opinion. It may cover any one of a multitude of undefined activities. No one can foretell how far the meaning of this phrase may be carried. No one can determine in advance what activities are comprehended within its scope.

■ The statement found in a prior clause of Section 307 to the effect that its provisions apply to certain persons whose principal purpose is to aid in the accomplishment of the enumerated objectives, is likewise subject to the same criticism.

What is meant by "principal purpose"? Is the term "principal" used as distinguished from "incidental"? May a person have a number of principal purposes? Or is the term used as meaning the "chief" purpose of a person's activities? When does a purpose become principal and when does it cease to be such? The Act contains no definition of that term.

We conclude that Sections 303 to 307, inclusive, are invalid as contravening the due process clause of the Fifth Amendment in failing to define the offense with sufficient precision and to set forth an ascertainable standard of guilt.

Section 310 of the Act, which relates to penalties, subjects any person who violates the provisions of the Act to a fine of not more than $5,000, or imprisonment for not more than twelve months, or both. In addition, subsection (b) of Section 310, provides that any person so convicted shall be prohibited for a period of three years from attempting to influence, directly or indirectly, the passage or defeat of any proposed legislation, or from appearing before a Committee of the Congress in support of or opposition to proposed legislation. Violations of this prohibition are made felonies punishable by imprisonment for not more than five years or a fine of $10,000.

■ Freedom of speech and the right of the people peaceably to assemble and to petition the Government for redress of grievances are guaranteed by the First Amendment to the Constitution. Congress is prohibited from making any law abridging these rights. The penalty provision of the Act, however, manifestly deprives a person convicted of violating the statute, of his constitutional right of freedom of speech and his constitutional right to petition the legislative branch of the Government. This clause is obviously unconstitutional. A person convicted of a crime may not for that reason be stripped of his constitutional privileges. In principle this provision is no different than would be an enactment depriving a person of the right of counsel, or the right of trial by jury, for a period of three years after conviction. It is inconceivable that anyone would argue in support of the validity of such a provision, and yet, in principle, the penalty clause in this statute is no different. We, therefore, reach the further conclusion that Sections 303 to 307, inclusive, of the statute are unconstitutional in that the penalty attached to their violation is invalid and contravenes the First Amendment to the Constitution.

■ Accordingly, we hold that Sections 303 to 307, inclusive, of the Act are unconstitutional. We regard Section 308 as

severable and we, therefore, do not express any opinion as to its validity, because that question is not involved in this litigation.

A permanent injunction against the prosecution of the plaintiffs for violations of any provision of Sections 303 to 307, inclusive, is granted.